The STATE of Texas, Petitioner,

v.

Rudolph DUGAR, Respondent.

No. B–6249.

Supreme Court of Texas.

June 29, 1977.

Rehearing Denied July 27, 1977.

Ronald L. Wilson, Crim. Dist. Atty., Michael J. Guarino II, Asst. Crim. Dist. Atty., Galveston, for petitioner.

Philip E. Hosey, Galveston, for respondent.

DANIEL, Justice.

At issue in this case is whether the district court exceeded its authority under Article 18.18, Texas Code of Criminal Procedure,[1] in ordering $7,692.39 of respondent Dugar's funds forfeited to the State as gambling proceeds. No statement of facts was brought forward. Having only the transcript before us, we must assume that any necessary fact issues were properly decided against Dugar.

The funds in question were seized from Dugar on December 6, 1974, during a gambling raid. On December 16, 1974, the criminal district attorney of Galveston County, acting on behalf of the State of Texas, filed suit in the Tenth District Court to have the money forfeited as gambling proceeds. The district judge set the matter for a hearing and directed that notice be mailed to Dugar. On March 18, 1975, Dugar was convicted in the 122nd District Court of "Gambling Promotion: Operating a Gambling Place." This conviction was based on the arrest of Dugar made during the December 6 raid.

Subsequently, on February 12, 1976, the judge of the Tenth District Court, after reciting the conviction in the 122nd District Court, rendered judgment ordering the funds seized from Dugar at the raid to be forfeited to the State. Dugar appealed the forfeiture judgment to the Court of Civil Appeals, which held that Section (a) of Article 18.18 did not give the Tenth District Court the authority to order the forfeiture, first, because Section (a) required that the court entering the judgment of conviction must also be the court ordering forfeiture, and secondly, because Dugar had not been convicted of any offense listed in Section (a). The Court of Civil Appeals therefore reversed the forfeiture judgment and rendered judgment that Dugar's money be returned to him. 538 S.W.2d 852. We agree with that portion of the opinion of the Court of Civil Appeals which holds that the Section (a) was inapplicable but find that the forfeiture was properly made under Sections (b)–(f) of Article 18.18. Accordingly, we reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Article 18.18 provides in part as follows:

"(a) Following the final conviction of a person for possession of a gambling device or equipment, altered gambling equipment, or gambling paraphernalia, for an offense involving a criminal instrument, or an offense involving a prohibited weapon, the court entering the judgment of conviction shall order that the machine, device, gambling equipment or gambling paraphernalia, instrument, or weapon be destroyed or forfeited to the state. If forfeited, the court shall order the contraband delivered to the state, any political subdivision of the state, or to any state institution or agency. If gambling proceeds were seized, the court shall order them forfeited to the state and shall transmit them to the grand jury of the county in which they were seized for use

1. All statutory inferences are to Vernon's Annotated Texas Code of Criminal Procedure unless otherwise noted.

in investigating alleged violations of the Penal Code, or to the state, any political subdivision of the state, or to any state institution or agency.

"(b) If there is no prosecution or conviction following seizure, the magistrate to whom the return was made shall notify in writing the person found in possession of the alleged gambling device or equipment, altered gambling equipment or gambling paraphernalia, gambling proceeds, prohibited weapon, or criminal instrument to show cause why the property seized should not be destroyed or the proceeds forfeited.

"(c) The magistrate shall include in the notice a detailed description of the property seized and the total amount of alleged gambling proceeds; the name of the person found in possession; the address where the property or proceeds were seized; and the date and time of the seizure." [2]

Since the conviction of Dugar was for an offense not listed under Section (a), we hold that Section (b) et seq. are applicable. Obviously the words "no prosecution or conviction following seizure" refer to prosecutions or convictions for one of the offenses enumerated in Section (a). Although the Court of Civil Appeals held that the "State's original petition was clearly brought under Section (b)" and the notice and hearing procedures applicable thereto, it did not write on the validity of the forfeiture under Section (b), having previously held Sections (b)–(f) to be unconstitutional in *Rumfolo v. State*, 535 S.W.2d 16 (Tex.Civ.App.1976). We reversed the *Rumfolo* decision, 545 S.W.2d 752 (Tex.1976), and held Sections (b)–(f) constitutional after the decision of the Court of Civil Appeals in the instant case had been handed down but prior to oral argument in this Court.

It has been suggested that since Dugar was convicted of a gambling offense, this negates the applicability of Section (b), which is conditioned on the absence of pros-

ecution or conviction. Such a reading is too narrow. We have interpreted Section (a) as applying to situations where there is a conviction for the listed offenses only. If we now interpret Sections (b)–(f) to apply to situations where there is no conviction for any offense as the literal language of the statute indicates, funds that are clearly gambling proceeds could not be forfeited solely because the State obtained a conviction of an offense that was not among those listed in Section (a). To construe the statute in such a manner would be contrary to the basic premise of an in rem forfeiture proceeding that, while the possessor may not be guilty of any criminal offense, the property seized is of such a nature that it should be destroyed or confiscated by the State. *Williams v. State of Texas*, 283 S.W.2d 444 (Tex.Civ.App.1955, writ ref'd). Therefore, we believe that the Legislature must have intended that Sections (b)–(f) provide the authority for forfeitures in all cases not covered by Section (a), that is, in all cases other than those in which there is a conviction for a listed offense. Under this interpretation Sections (b)–(f) apply to Dugar's case.

■ Dugar argues that the judge of the Tenth District Court was not the "magistrate to whom the return was made" and therefore lacked jurisdiction. The proceeds here were subject to the order of a justice of the peace of Galveston County, presumably because that court issued the search warrant under which the December 6 raid was conducted. Dugar argues that the justice of the peace therefore should have exclusive jurisdiction to pass on the forfeiture.

■ Article 5, Section 8 of the Texas Constitution provides that "[t]he District Court shall have original jurisdiction . . . in all suits in behalf of the State to recover penalties, forfeitures and escheats." See also Article 1906(1), Texas Revised Civil Statutes (1964). Although Article 5, Section 1 of the Texas Constitution gives the Legislature the power to "establish such

---

2. Sections (d), (e) and (f) provide further details as to notice, hearing, and evidence in forfeiture cases brought under Section (b).

other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto," we held in *Reasonover v. Reasonover,* 122 Tex. 512, 58 S.W.2d 817, 819 (1933), that:

> "The amendment to section 1, article 5 adopted in 1891, does not purport to take away from the district court, or to authorize the Legislature to take away from it, its constitutional jurisdiction. It does authorize the Legislature to take from it the exclusive nature of its jurisdiction over the subjects mentioned in section 8, article 5, and permits the Legislature to give jurisdiction over them also to other courts. The Legislature cannot take away from a district court jurisdiction given it by the Constitution."

See also *State ex rel Rector v. McClelland,* 148 Tex. 372, 224 S.W.2d 706 (1949). Therefore, the most that the Legislature could constitutionally accomplish in Article 18.-18(b)–(f), was to grant concurrent jurisdiction to a court to which the return was made that was not also a district court. Any district court within the county already had jurisdiction under the Constitution. When two courts have concurrent jurisdiction of a suit, the court in which the suit is first filed acquires dominant jurisdiction. *State ex rel George v. Baker,* 120 Tex. 307, 40 S.W.2d 41 (1931); *Neal v. Texas Employers' Insurance Association,* 118 Tex. 236, 14 S.W.2d 793 (1929); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926). In the present case the Tenth District Court acquired dominant jurisdiction. Therefore it was correct in proceeding to order the forfeiture.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.